UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: RUSSELL FONDREN,  　　　　　　　　　CASE NO. 08-12380
DEBTOR  　　　　　　　　　　　　　　　　　　CHAPTER 13

## OPINION

On consideration before the court is an objection, filed by the Bank of Holly Springs, Abbeville Branch, ("Bank"), to the confirmation of the Chapter 13 plan of the debtor, Russell Fondren; a response to the objection having been filed by the said debtor; and the court, having heard and considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157. This is a core contested proceeding as defined in 28 U.S.C. §157(b)(2)(A), (L), and (O).

II.

The facts of this proceeding are primarily uncontradicted. The debtor filed his petition for relief pursuant to Chapter 13 of the U.S. Bankruptcy Code on June 20, 2008. The bank has two claims against the debtor, both of which are admittedly oversecured. The first claim is evidenced by a loan secured by approximately 8.8 acres of unimproved real property. The contract interest rate on this loan is 9.25% per annum which was 1% above the prime rate at the time that the loan was made. The second claim is evidenced by a loan secured by a non-purchase money security interest in two vehicles. The contract rate of interest on this loan is 14.5% per annum which was 6.75% above the prime automobile loan rate at the time this loan was made.

Jason Butts, a representative of the bank, testified that the debtor had a below average credit rating, as well as, a below average credit history with the bank since many of his payments were made while in a past due status.

The single issue in this proceeding is the determination of the appropriate interest rate that should be paid on claims owed to an oversecured creditor through the debtor's Chapter 13 plan.

### III.

Recently, the Fifth Circuit Court of Appeals in *Drive Financial Services, L.P. v. Jordan*, 521 F.3d 343 (5th Cir. 2008), examined the question of what interest rate should be applicable to the repayment of a claim secured by a "910 vehicle" through a Chapter 13 plan. The value of the vehicle was less than the amount of the purchase money indebtedness, but the claim had to be treated as if it were fully secured because of the provisions set forth in the "hanging paragraph" which follows §1325(a)(9) of the Bankruptcy Code.[1] In *Drive Financial*, an initial concern was whether the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) had superceded the decision of the United States Supreme Court in *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S. Ct. 1951, 158 L.Ed. 2d 787 (2004). In answering this threshold question, the Fifth Circuit offered the following comment:

> ....[T]he purpose of bifurcation is to determine how much of a creditor's claim is secured; then section 1325(a)(5)(B) determines what interest rate should be applied to that secured claim. In *Till*, the Supreme Court decided what interest rate was required to be paid on an objecting creditor's secured claim to ensure that the creditor receives value for its crammed down claim as required by section 1325(a)(5)(B). That is the same question presented in this case. The only difference is that *all* of Drive Financial's claim is

---

[1] In this opinion, all cited Code sections will be considered as sections of the United States Bankruptcy Code unless specifically noted otherwise.

2

secured, as opposed to *only a portion* of the creditor's claim being secured in *Till*, because the hanging paragraph prohibited Drive Financial's claim from being bifurcated. Drive Financial has provided no reason for why this distinction would affect *Till's* holding regarding the proper rate of interest to be paid upon a secured claim.

BAPCPA did not amend the definition of value under section 1325(a)(5)(B), nor did it prohibit bankruptcy courts from altering the contractual terms for secured claims. Since these were the issues decided by *Till*, we hold that congress did not supercede *Till* when it passed BAPCPA.

521 F.3d at 347-48.

The undersecured creditor in *Till* objected to confirmation, asserting that it was entitled to have interest paid on its claim at the contract rate. The Seventh Circuit Court of Appeals had concluded earlier that the contract rate was presumptively the rate to be utilized. A plurality of four justices, joined by Justice Thomas who concurred in the judgment, reversed the Seventh Circuit and held that the prime-plus rate was the appropriate risk-adjusted interest rate to use for installment payments to creditors holding a crammed-down secured claim in a Chapter 13 plan. The plurality also concluded that in order to receive the present value of the allowed secured claim, creditors should receive an interest rate higher than the prime lending rate to reflect the risk associated with lending to borrowers who had filed for bankruptcy. In *Drive Financial*, the Fifth Circuit applied this same reasoning to the "910 vehicle" claim which was deemed to be fully secured because of the "hanging paragraph," even though the vehicle's value was actually less than the amount of the related indebtedness.

The *Drive Financial* panel was well aware of a previous decision rendered by the Fifth Circuit in *Green Tree Fin. Servicing Corp. v. Smithwick*, 121 F.3d 211 (5th Cir. 1997), which had adopted the "presumptive contract rate approach" in determining the appropriate interest rate to be paid on a secured claim through a Chapter 13 plan. Significantly, *Smithwick* involved an

3

oversecured claim which is identical to the claims now before this court.

While *Drive Financial* held that the plurality opinion in *Till,* coupled with Justice Thomas's concurrence, rejected the presumptive contract rate approach as being too generous to creditors, the court's concluding paragraph narrowed the breadth of the decision to apply to a factual scenario that was indistinguishable from that in *Drive Financial,* to-wit:

> For the foregoing reasons, we hold that the *Till* plurality's adoption of the prime-plus interest rate approach is binding precedent in cases presenting an essentially indistinguishable factual scenario. To this extent, *Till* is an intervening precedent from the Supreme Court that overrules this circuit's prior precedent of *Smithwick. United States v. Holy Land Found. for Relief and Dev.*, 445 F.3d 771, 789-90 (5th Cir. 2006). Thus, the bankruptcy court did not err in rejecting Drive Financial's objections to application of the prime-plus rate to Drive Financial's secured claim in the Jordans' Chapter 13 plan.

521 F.3d at 350.

IV.

This court has already observed that the bank's claims in the current proceeding are identical to Green Tree's oversecured claim in *Smithwick.* Since the claims are oversecured, §506(b) of the Bankruptcy Code, which is set forth immediately hereinbelow, must be considered, to-wit:

> (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges <u>provided for under the agreement</u> or State statute under which such claim arose. (emphasis supplied)

In *Drive Financial,* the creditor's claim was "deemed" fully secured. It was obviously not oversecured. Section 506(b) was not applicable, and, consequently, the factual scenario in this proceeding is distinguishable from that in *Drive Financial.* The *Drive Financial* court

4

expressly stated that *Till* was an intervening precedent that overruled the Fifth Circuit's prior precedent of *Smithwick* only to the extent that the case presented an essentially indistinguishable factual scenario. Because the facts herein are obviously different from those in *Drive Financial*, this court reads the literal language of *Drive Financial* to mean that *Smithwick* is still binding precedent as to the payment of allowed oversecured claims through a Chapter 13 plan. *See also, In Re D. M. White Construction Co., Inc.*, 366 B.R. 820 (Bankr. E.D. Tenn. 2007).

This court is aware that there are differing views on this issue. The Second Circuit Court of Appeals in *In re Milham*, 141 F.3d 420 (2d Cir. 1998), held that §506(b) requires that post-petition interest be payable to an oversecured creditor up to the date that the Chapter 13 plan is confirmed. At the date of confirmation, the amount of the allowed secured claim is established which must be paid its present value over the life of the plan. The court concluded that the oversecured creditor was not entitled to receive a higher rate of interest following confirmation than one which would assure that it received its claim's present value as required by §1325(a)(5)(B). The Second Circuit rejected the presumptive contract rate approach and utilized an interest rate applicable to a United States Treasury instrument with an equivalent maturity, plus a risk premium, to-wit:

> We have previously determined that interest under §1325(a)(5)(B)(ii) "should be fixed at the rate on a United States Treasury instrument with a maturity equivalent to the repayment schedule under the debtor's reorganization plan." *In re Valenti*, 105 F.3d 55, 64 (2d Cir. 1997). However, "[b]ecause the rate on a treasury bond is virtually risk-free, the §1325(a)(5)(B)(ii) interest rate should also include a premium to reflect the risk to the creditor in receiving deferred payments under the reorganization plan." *Id.* The court below determined that in the Milhams' case, this equation resulted in an 8.5% postconfirmation interest rate.
> . . . .
> Accordingly, we hold that an oversecured creditor such as Key Bank is entitled to receive §506(b) interest only until the confirmation date of the Chapter 13 reorganization plan.

5

> At that time, the accumulated pendency interest becomes a part of the allowed secured claim, and the plan must provide for payment of the present value of such allowed claim as of the effective date of the plan. Present value is achieved by the payment of interest at a rate calculated in accordance with our holding in *In re Valenti*. Because the postconfirmation rate in the confirmed plan at issue was so calculated, the bankruptcy court decision confirming the plan, and the decision of the Bankruptcy Appellate Panel affirming the confirmation, are affirmed.

141 F.3d at 424-25.

As noted hereinabove, the limited holding in *Drive Financial* indicates that the Fifth Circuit's earlier decision in *Smithwick* is still binding precedent insofar as the payment of interest on oversecured claims is concerned in Chapter 13 cases. This court certainly believes that it is obligated to follow what it perceives to be Fifth Circuit precedent. Consequently, Chapter 13 debtors who are required to pay oversecured claims through their plans presumptively must pay the contract rate of interest unless an exception, as contemplated in the *Smithwick* opinion, dictates otherwise. That exception can arise when either the debtor or the creditor believes that the contract rate is no longer applicable. If an exception is to be allowed, it must be established and supported by competent evidence.

V.

The debtors' attorney in this proceeding has proposed that the court set a risk premium to be added to the New York prime interest rate in effect on the date of the case filing to serve as the standard rate of interest to apply to all secured claims paid through the Chapter 13 plan. Since the court has now concluded that the contract rate of interest must be paid to oversecured creditors, this particular proposal is inapplicable to this proceeding. The bankruptcy courts in the Northern and Southern Districts of Mississippi currently have in place a procedure that utilizes a "rule of thumb" interest rate which is adjusted periodically by the courts. This rate serves as a

benchmark to assist Chapter 13 debtors and creditors in calculating the payment of the present value of claims as of the effective date of confirmation. This procedure has been utilized over the years with great effectiveness to reduce interest rate litigation. However, the courts' rate is only a "rule of thumb" rate and is not officially binding. To challenge this "rule of thumb" rate, any party may present evidence to show that it is not applicable to the facts of a particular proceeding. This is very similar to the exception procedure contemplated in *Smithwick*, which was mentioned hereinabove.

If the court adopted the proposal offered by the debtor's attorney, the standard risk premium would only be a "rule of thumb" number which could also be challenged in any proceeding. The historical success of the present methodology is evident. This court sees no reason to alter this methodology which, for all practical purposes, would not create a different result, but would cause more uncertainty in verifying the applicable prime rate for any given date. In addition, this court believes that gearing the formula to a standard risk factor, applicable to all debtors, would be perceived as a carte blanche invitation to litigate the amount of the factor.

A separate order will be entered consistent with this opinion.

This the 7th day of November, 2008.

/s/ David W. Houston, III
DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE